## Wytheville.

DOBYNS' ADM'X v. WARING AND ALS.

JUNE 30th, 1886.

1. LANDS—*Unrecorded contracts—Creditors.*—Under Code 1873, ch. 114, sec. 5, unrecorded contracts for the sale of real estate are void as to creditors with or without notice. *Guer? ant* v. *Anderson,* 4 Rand. 208.

2. IDEM—*Case at bar.*—In case here the evidence proves that there was a written contract for the sale of real estate that was not recorded before a creditor had got and docketed his judgment against the vendor; and the case does not come within the principle of *Floyd* v. *Harding,* 28 Gratt. 401.

Appeal from decree of circuit court of Essex county, rendered January 19, 1882, in a suit in chancery therein under the style of *Dobyns* v. *Waring,* wherein the bill was dismissed at plaintiff's costs, and on her petition an appeal was awarded.

Opinion states the case.

Argued at Richmond; decided at Wytheville.

*T. R. B. Wright* and *J. M. Matthews,* for the appellant.

*Thomas Croxton,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

This is a controversy as to priority of right between a judgment creditor, asserting the lien of a judgment on a certain

real estate on the one hand, and subsequent purchasers of said real estate on the other hand, who claim by deed under one who took the same as purchaser from one of the judgment debtors, who conveyed by deed made and recorded subsequent to the rendition and docketing of the judgment, there being of record no prior executory contract.

Omitting many things that occurred in the progress of the cause, which are not material to the question to be decided by this court, the case, briefly stated, is this: Judith E. Dobyns, in her lifetime, to wit: on the 14th day of November, 1861, recovered in the circuit court of Essex county a judgment at law against Richard H. Waring, Robert. P. Waring, Thomas L. Waring, and Fannie A. Carter, for $3,924.54, to be discharged by the payment of $1,952.27, with interest from the 21st day of January, 1861, and costs. In January, 1872, Lucy E. Dobyns, administratrix *de bonis non*, with the will annexed, of said Judith E. Dobyns, deceased, instituted a suit in chancery in the county court of said county in behalf of herself and others, lien creditors of said Richard H. Waring and Thomas L. Waring, to enforce the lien of said judgment against the real estate of said Warings.

The bill alleges that said Richard H. and Thomas L. Waring, on the 5th day of January, 1866, conveyed by deeds to John Wilson, trustee, all the real estate of which they were possessed, for the benefit of certain parties named in the deeds, and that the judgment aforesaid, which was duly docketed on the 30th day of September, 1865, is a lien on said real estate, and paramount to the lien of said trust deed; and prayed for an account of the liens and their priorities, and for a sale of the real estate to satisfy the same, and for general relief; and the said Richard H. Waring and Emily, his wife; Thomas L. Waring and Mary, his wife; Robert H. Waring, Wm. Austin Waring, Thomas L. Waring, Jr., Adie Waring, John H. Wil-

son, trustee, and Andrew Rutherglenn, assignee in bankruptcy of said Richard H. Waring, and Thomas L. Waring, were made parties defendant to the bill.

On the 19th of March, 1872, a decree was entered directing an account of the real estate of the said Richard H. and Thos. L. Waring, of the liens thereon and their priorities, and also of the actings and doings of said Wilson, trustee. Accordingly, on the 13th day of July, 1872, the commissioner returned his report showing the real estate conveyed in trust by the said Richard H. and Thomas L. Waring, as aforesaid, and reported the judgment aforesaid as the first lien thereon; and in the list of lands of which the said *Richard H. Waring* was possessed or entitled, at or after the 14th day of November, 1861, the date of said judgment, the commissioner also reported a tract of 260 acres in Essex county, called "Bathurst," which, the commissioner reports, "was sold and conveyed to Walter S. Jones on the 16th day of June, 1866."

On the 16th of December, 1872, the cause was removed to the circuit court of said county.

On the 4th of October, 1878, the plaintiff filed her amended bill, reiterating the statements in the original bill, and adding such statements and averments as were necessary to assert the lien of said judgment, also on the said 260-acre "Bathurst" tract reported by the commissioner as sold and conveyed by Richard H. Waring to Walter S. Jones, on the said 16th day of June, 1866, subsequent to the rendition and docketing of the judgment aforesaid. The amended bill further alleges that the said Walter S. Jones, by his deed, admitted to record on the 6th of September, 1869, conveyed the said "Bathurst" tract to Thomas Croxton, agent for the creditors of Ross A. Cauthorn'; and then sets forth that the property embraced in the two deeds to John H. Wilson, trustee, and the parties interested therein, was under the jurisdiction and control of the Dis-

trict Court of the United States for the Eastern District of Virginia; and that an order had been entered by said district court, in a suit pending therein, for the sale of said property. To this amended bill, Richard H. Waring, Robert P. Waring, Thomas L. Waring, Thomas Croxton, agent for the creditors of Ross A. Cauthorn, and James M. Matthews, assignee in bankruptcy of said Richard H. and Thomas L. Waring, were made parties defendant.

On the 19th of February, 1873, it appearing that the jurisdiction of the federal court had attached as to the property, real and personal, conveyed by said deeds to Wilson, trustee, prior to the bringing of this suit, the said circuit court of Essex, by its decree, relinquished its jurisdiction as to the property so conveyed, but not as to the said "Bathurst" tract of 260 acres, as to which the said federal court had not acquired jurisdiction as aforesaid. Subsequently, to wit: on the 6th of November, 1878, a decree was entered by the said circuit court dismissing the said original and amended bills in this cause as to all the defendants except Richard H. and Thos. L. Waring, Robert P. Waring, James M. Matthews, assignee, and Thomas Croxton, agent, and dismissing the original bill "so far as it seeks to subject the real estate of the said defendants, Richard H. and Thomas L. Waring, surrendered by them in the bankrupt court," of which the "Bathurst" tract, of 260 acres, is no part, and referring the cause to a commissioner to enquire and report whether the judgment of the plaintiff's testatrix was a subsisting lien on the said "Bathurst" tract, conveyed by Rich'd H. Waring to Walter S. Jones, and by said Jones to Croxton, agent for Cauthorn's creditors. It seems that no report was ever made under this decree.

On the 7th of July, 1880, a second amended bill was filed, reciting the facts set forth in the original and first amended bill, and making *Walter S. Jones* a party defendant;

and on the 25th of July, 1881, the said Jones filed his answer, stating that "he purchased 'Bathurst' of R. H. Waring, in 1859, possession to be given in January, 1860; payment to to the amount of $5,500 to be made in bonds, and that he *took the property,* and paid for it as agreed"; and having thus directly responded to the averments of the bill, he adds in a separate sentence, "no written contract was entered into between Waring and this respondent"; and he further states: "The condition of the country for some years prevented the usual attention to business, and hence the delay in obtaining the deed."

Richard H. Waring also answered, and in his answer says: "That he sold the farm called 'Bathurst,' as alleged, to Walter S. Jones in July, 1859, and entered into a written contract with him, which contract this respondent assigned to L. H. Garnett, and took his receipt therefor (see paper marked 'B,' filed herewith, and asked to be read as part of this answer)." And said Waring, in his answer, further says: "The contract was that Jones was to pay for the farm in bonds on the 1st day of January, 1860. When these bonds were settled, then this respondent was to make a deed to Jones for the land. This was not done until 1867. Whilst the deed from this respondent, and Emily C., his wife, is dated in 1866, it was not passed over or surrendered to Jones and recorded until 1867, from the fact, and for the reason, that the contract of sale was not fully complied with until that time, to wit: 1867, about September."

Exhibit "B," referred to in Waring's answer, is in these words:

"Richard H. Waring has this day assigned me his full interest in the contract this day entered into between him and Walter S. Jones, which said interest I am to account for to him in settlement of our accounts.

"Given under my hand and seal, 13th July, 1859.

"LEWIS H. GARNETT. [Seal.]"

It appears that Waring had purchased "Bathurst" from Lewis H. Garnett, and owed him a balance of the purchase money; hence the assignment by Waring to Garnett of the contract between the former and Jones.

The deposition of Richard H. Waring was also taken, and he testifies that the contract between him and Jones was a written contract, and refers to circumstances tending to show that he could not be mistaken. The plaintiff also took the deposition of Lewis H. Garnett, who testified as to the character of the contract as follows, to wit: "There was a written contract which I received, and gave Waring the receipt called for in paper B. I could not and would not have receipted for any other sort, or could I have received the bonds without such a paper." This deposition of Garnett was, however, excepted to, and is referred to in the final decree as having been excepted to, and the exception sustained, though there is no decree in the record showing when the exception was sustained; nor does the record show when the exception, which simply is, "excepted to for want of notice," was endorsed; the deposition having been taken on the 1st day of November, 1879, and it not appearing by the record that there was between that time and the rendition of the final decree appealed from, any decree referring to and sustaining said exception, other than the parenthetical statement, in said final decree, that the deposition had been excepted to and the exception sustained. The deposition is, however, out of the case.

In this state of things, at a special term of said circuit court, on the 19th of January, 1882, and when, as stated in the petition for appeal, the leading counsel for the plaintiff was absent from the county, and had no reason to believe that this cause would be brought to hearing, a final decree was entered, holding that there was *no written contract* between Richard H. Waring and Walter S. Jones for the sale of "Bathurst," but

that there was a verbal argreement between them, under which Jones was let into possession, and paid the purchase price therefor in full on the 1st day of January, 1860, and was from that time in position to enforce his title in a court of equity, and that the appellant's judgment lien is *subordinate* to the claims of those holding under said Jones, and dismissing the bill. From this decree the case is here on appeal.

As preliminary to the main question, is the decree complained of erroneous? It may be said, that inasmuch as the deposition of Lewis H. Garnett was taken on the 1st day of November, 1879, and it not appearing when the exception thereto was endorsed, and there being in the record here no decree rendered in the cause subsequent to the taking of that deposition and prior to the final decree complained of, the fair inference would be, either that said exception was passed upon and sustained at the time of the rendition of said final decree, or else, as is most likely, at the last preceding regular term of said circuit court, and that the cause was then continued in order to give the plaintiff an opportunity to re-take the deposition. If the latter, then it is clear that the cause thus became one of those not ready for hearing at the last preceding regular term, and could not be heard at said special term without the consent of parties. See Code 1873, ch. 155, sec. 21. It is not pretended that the cause was heard by consent.

We come now to consider the case on its merits. It is contended for the appellant that the contract of sale and purchase between Richard H. Waring and Walter S. Jones was in writing, but was never recorded, and was therefore void under and by virtue of sections four and five, of ch. 114, Code 1873; and that the lien of the appellant's judgment attached to the land in the hands of said Waring before his conveyance to said Jones, and is a prior subsisting lien and superior to the claim of said Jones, and those claiming under him. On the other

hand, it is insisted for the appellees, the present holders, who claim under a conveyance from said Jones, that there was no written contract between the said Richard H. Waring and Walter S. Jones, but that the contract was a *verbal* contract between them, made prior to the rendition of the appellant's judgment, and that under it the said Jones paid the contract price in full and was put into possession, and thereby acquired a valid equitable title to the land, and that, although the conveyances from Waring to Jones, and from the latter to Croxton, agent, &c., were made subsequent to the rendition of the appellant's judgment, yet Jones, and those claiming under him, come within the principle laid down in *Floyd* v. *Harding*, 28 Gratt. 401, and that class of cases, and that the land is not liable to said judgment.

Whether or not the decree appealed from is erroneous, depends upon the question, Was the contract between the judgment debtor, Richard H. Waring, and his vendor, Walter S. Jones, a written contract? We are of opinion that it was a written contract, and that the circuit court erred in holding the contrary.

The deed from Richard H. Waring to Walter S. Jones bears date June 16, 1866, and was not recorded until 10th of September, 1867, long subsequent to the rendition and docketing of the appellant's judgment. There was no prior executory contract of record. Hence, having no guide other than said deed, executed and recorded long after the rendition of the judgment, it was quite natural for the framer of the bill to take the date of the deed as the time when the contract was entered into, and to aver, as he did, that the sale and conveyance by Waring to Jones was of that date. The bill makes no reference to the terms or character of the contract, or any reference to any prior executory contract, either verbal or written; nor does it propound to Walter S. Jones any special interrogatory,

but simply, by way of amendment, makes him a party defendant and, in the ordinary way, calls on him to answer the bill as amended. He answered very briefly, stating that "he purchased 'Bathurst' of R. H. Waring in 1859, possession to be given January, 1860, payment to be made to the amount of $5,500 in bonds; and that he took the property and paid for it as agreed." And having thus answered, he, by a separate and distinct sentence added the words: "No *written contract* was entered into between Waring and this respondent." It is insisted by counsel for the appellees that this statement in said answer that there was "no written contract" is a complete defence to the claim asserted by the appellant, because, it is said, "it is directly responsive to and contradicts the allegation of the bill which refers to the terms of purchase by the respondent from Waring," and that when a party is called upon to answer, and his answer is responsive and contradicts the bill, the answer is conclusive unless disproved by two witnesses, or by one witness, and *clear* corroborating circumstances. The rule as usually stated is, that in such case, to overturn the weight of the answer requires two witnesses, or one witness, and *strong* corroborating circumstances. But, conceding, as certainly we must, the rule as stated with substantial accuracy, yet it is not true that the bill refers to the *terms of purchase;* nor is it true that said statement in the answer of Jones is responsive to any allegation in the bill. On the contrary, it is distinctly affirmative in its character, is not responsive to anything stated in the bill, is inconsistent with the facts and circumstances of the case, and wholly unsustained by evidence.

All that the bill alleges on this point is, that Waring sold and conveyed to Jones, subsequent to the docketing of the appellant's judgment, and calls on Jones to answer the bill "in all material matters." The bill contains no intimation as to whether there was prior to the deed of conveyance from

Waring to Jones any executory contract, either written or verbal. In the light of the case made by the bill, it was wholly immaterial whether there was such prior contract, or, if so, whether it was written or verbal, until it was properly averred and proved. It was competent for Jones to set up in his answer, as he did, that there was no written contract, which is tantamount to averring that there was a verbal contract prior and superior to the appellant's claim. But the averment thus made was of affirmative matter, and must be proved. It is not proved, and is not evidence for the appellees. 2 Rob. Pr. (old ed.) 330; *Shurtz* v. *Johnson,* 28 Gratt. 657. But for this, authorities need not be cited.

Such being the state of the case on the part of the appellees, how stands the case for the appellant on the evidence? The deposition of Richard H. Waring, who sold and conveyed the land in question to Walter S. Jones, contains the only direct evidence in the cause as to the character of the contract, and when it was entered into. He states positively that he sold the land to Walter S. Jones in July, 1859, to be paid for in good bonds; that there was a written contract between them, which contract he turned over to L. H. Garnett; and he states: "it could not have been a verbal contract; I do not see how I could turn over to him a verbal one." And he explains that his reason for turning the contract over to Garnett was that he had purchased the same land from Garnett, and owed him a balance of purchase money therefor; and he files with his deposition Garnett's receipt therefor in these words and figures:

"Richard H. Waring has this day assigned me his full interest in the contract this day entered into between him and Walter S. Jones, which said interest I am to account for to him in settlement of our accounts.

"Given under my hand and seal this 23d July, 1859.

"LEWIS H. GARNETT.    [Seal.]"

This witness further states, that he does not remember all that was stated in said contract, but that it stated the terms of sale, and was just such a contract as is usually drawn up.

In the light of Waring's testimony and the circumstances detailed by him, can it be doubted for a moment that there was a written contract between him and Jones at the time of the sale in July, 1859? We think not. Is it not incredible that Lewis H. Garnett, a lawyer, looking to the proceeds of Waring's sale to Jones for satisfaction of the balance due him by Waring, would take the assignment of a verbal contract and execute his receipt under seal for same, when such an assignment would have been no authority for the payment of the purchase price by Jones to him? Can it be doubted that Waring's direct testimony, supported by these strong corroborating circumstances, are all-sufficient to overturn the statement in Jones' answer that there was no written contract, even if that statement were responsive, and not affirmative matter, as it is? The conclusion, then, is irresistible that the contract entered into prior to the rendition of appellant's judgment, was a contract in writing. That contract was never recorded, and by statute was void under section 5 of chapter 114, Code 1873; and the appellant's judgment having been rendered and docketed prior to the recordation of the deed from Waring to Jones, the judgment creditor, the appellant's testatrix, must be regarded as entitled to the property at the date of the judgment, in like manner and to the same extent as if the debtor (Waring) "had never aliened it." Burks, J., in *Marsh, Price & Co.* v. *Chambers*, 30 Gratt. 299. And by virtue of the statute above referred to, the previous executory contract being in writing, and not recorded, was a nullity, so that, *quoad* the judgment creditor, the land was still the judgment debtor's, and subject to the lien of the judgment which attached immediately on its rendition, which was long

prior to the debtor, Waring's conveyance to Jones, under whom the appellees claim.

The language of the statute declaring a contract in writing, under under such circumstances, void as to creditors, until and except from the time that it is duly admitted to record, is too clear, and has been too often enforced by this court to admit of doubt.    Hence, in *Eidson* v. *Huff*, 29 Gratt. 338, Staples, J., speaking for the court, said: "This court cannot construe away a plain statute to avoid cases of individual hardship. The legislature has thought proper to place all written contracts for the sale of land upon the same footing as deeds of conveyance, so far as they come within the influence of the registration acts, and we have no alternative but to enforce the law."

Numerous other cases might be referred to, but it is needless to do so.

From what has already been said, it is obvious that the cases of *Cowardin* v. *Anderson*, 78 Va. 88, and *Sinclair* v. *Sinclair*, 79 Va. 40, and similar cases relied on for the appellees, and which hold that the judgment creditor can acquire no better right to his debtor's estate than the debtor himself has, have no application to the case in hand.    It is equally clear that the case here does not come within the principle laid down in *Floyd* v. *Harding*; *supra*, and that class of cases, in respect to a pre-existing equity under a *parol* contract for land, where all the purchase money is paid and possession taken under the contract before the rendition of the judgment against the debtor vendor.

In any and every view of the case, it is clear that the court below erred in holding that there was no written contract between Richard H. Waring and Walter S. Jones for the sale of "Bathurst" by the former to the latter; but that there was a verbal agreement between them, under which Jones paid all

the purchase price, and was put in possession on the 1st day of January, 1860, and was, from that time, in position to enforce his title in a court of equity; and in holding also that the judgment lien of appellant's testatrix is subordinate to the claim of those holding under said Jones.    And this court is of opinion further that said judgment is a subsisting lien on the said tract of land known as "Bathurst," and is prior and superior to the claim of said Jones and the appellees, who claim under him.    Therefore, the said decree must be reversed and annulled, and the cause remanded to said circuit court for such further proceedings as may be necessary to enforce the lien of said judgment against said land.

DECREE REVERSED.